| | | |
|---|---|---|
| **DAVID RICHARD SIZEMORE,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| Vs. | ) | ORDER |
| | ) | |
| **CAROLYN W. COLVIN, Acting Commissioner of** | ) | |
| **Social Security,** | ) | |
| | ) | |
| Defendant. | ) | |

**THIS MATTER** is before the court upon plaintiff's Motion for Summary Judgment and the Commissioner's Motion for Summary Judgment. Having carefully considered such motions and reviewed the pleadings, the court enters the following findings, conclusions, and Order.

## FINDINGS AND CONCLUSIONS

## I. Administrative History

Plaintiff filed an application for a period of disability and Disability Insurance Benefits and Supplemental Security Income. Plaintiff's claim was denied both initially and on reconsideration; thereafter, plaintiff requested and was granted a hearing before an administrative law judge ("ALJ"). After conducting a hearing, the ALJ issued a decision which was unfavorable to plaintiff, from which plaintiff appealed to the Appeals Council. Plaintiff's request for review was denied and the

ALJ's decision affirmed by the Appeals Council, making the ALJ's decision the final decision of the Commissioner of Social Security ("Commissioner"). Thereafter, plaintiff timely filed this action.

## II. Factual Background

It appearing that the ALJ's findings of fact are supported by substantial evidence, the undersigned adopts and incorporates such findings herein as if fully set forth. Such findings are referenced in the substantive discussion which follows.

## III. Standard of Review

The only issues on review are whether the Commissioner applied the correct legal standards and whether the Commissioner's decision is supported by substantial evidence. <u>Richardson v. Perales</u>, 402 U.S. 389, 390 (1971); <u>Hays v. Sullivan</u>, 907 F.2d 1453, 1456 (4th Cir. 1990). Review by a federal court is not *de novo*, <u>Smith v. Schwieker</u>, 795 F.2d 343, 345 (4th Cir. 1986); rather, inquiry is limited to whether there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," <u>Richardson v. Perales</u>, <u>supra</u>. Even if the undersigned were to find that a preponderance of the evidence weighed against the Commissioner's decision, the Commissioner's decision would have to be affirmed if supported by substantial evidence. <u>Hays v. Sullivan</u>, <u>supra</u>.

## IV. Substantial Evidence

### A. Introduction

The court has read the transcript of plaintiff's administrative hearing, closely read the decision of the ALJ, and reviewed the relevant exhibits contained in the two-volume administrative record. The issue is not whether a court might have reached a different conclusion had he been presented with the same testimony and evidentiary materials, but whether the decision of the administrative law judge is supported by substantial evidence. The undersigned finds that it is.

### B. Sequential Evaluation

A five-step process, known as "sequential" review, is used by the Commissioner in determining whether a Social Security claimant is disabled. The Commissioner evaluates a disability claim under Title II pursuant to the following five-step analysis:

a. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings;

b. An individual who does not have a "severe impairment" will not be found to be disabled;

c. If an individual is not working and is suffering from a severe impairment that meets the durational requirement and that "meets or equals a listed impairment in Appendix 1" of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors;

d.  If, upon determining residual functional capacity, the Commissioner finds that an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made;

e.  If an individual's residual functional capacity precludes the performance of past work, other factors including age, education, and past work experience, must be considered to determine if other work can be performed.

20 C.F.R. § 404.1520(b)-(f). In this case, the Commissioner determined plaintiff's claim at the fifth step of the sequential evaluation process.

## C.  The Administrative Decision

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since December 27, 2010, his alleged onset date. Administrative Record ("A.R.") at 22. At step two, the ALJ found that plaintiff had severe impairments of diabetes mellitus type II, bipolar disorder with panic attacks, and substance abuse. A.R. at 22-24. At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. A.R. at 24-28. Before reaching step four, the ALJ made a Residual Functional Capacity ("RFC") determination, and concluded that plaintiff could perform

a full range of work at all exertional levels, but with the following nonexertional limitations: he can never climb ropes, ladders, scaffolds; avoid concentrated exposure to hazards and vibration; must work only

in low stress defined as non-production jobs, no fast-paced work like assembly-line; with no public contact.

A.R. at 28). Then at step four, the ALJ found that plaintiff was unable to perform his past relevant work as a commercial truck driver. A.R. at 45-46).

Finally, at step five, the ALJ found that plaintiff could perform jobs existing in significant numbers in the national economy, A.R. at 46-47, and that plaintiff was not disabled from December 27, 2010, through December 6, 2013, the date of the decision. A.R. at 47.

### D. Discussion

#### 1. Plaintiff's Assignments of Error

Plaintiff has made the following assignments of error:

I. Remand or reversal is required pursuant to <u>Mascio v. Colvin</u>, 780 F.3d 632 (4th Cir. 2015);

II. The administrative law judge (ALJ) did not properly consider the scores from plaintiff's Global Assessments of Functioning (GAF); and

III. The decision is not supported by substantial evidence.

Plaintiff's assignments of error will be discussed seriatim.

## 2.    First Assignment of Error: Compliance with <u>Mascio</u>

Plaintiff first contends that the ALJ's evaluation of the evidence is inconsistent with a number of the principles underlying the decision in <u>Mascio</u>, <u>supra</u>.  In <u>Mascio</u>, the Court of Appeals for the Fourth Circuit held that an ALJ's use of

> boilerplate gets things backwards by implying "that ability to work is determined first and is then used to determine the claimant's credibility." <u>Bjornson</u>, 671 F.3d at 645.
>     The boilerplate also conflicts with the agency's own regulations, which direct the ALJ to "determine the extent to which [the claimant's] alleged functional limitations and restrictions due to pain or other symptoms can reasonably be accepted as consistent with the medical signs and laboratory findings and other evidence to decide how [the claimant's] symptoms affect [his or her] ability to work." 20 C.F.R. § 416.929(a). Thus, the ALJ here should have compared Mascio's alleged functional limitations from pain to the other evidence in the record, not to Mascio's residual functional capacity.

<u>Mascio</u>, 780 F.3d at 639.    The appellate court went on to hold that such error would have been harmless "if [the ALJ] properly analyzed credibility elsewhere." <u>Id.</u>

The appellate court also held that "'[r]emand may be appropriate ... where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review.'" <u>Id.</u> at 636 (quoting <u>Cichocki v. Astrue</u>, 729 F.3d 172, 177 (2d Cir.2013)). "[T]he ability to perform simple tasks differs from the

ability to stay on task. Only the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." Id. at 638. "In particular, although the ALJ concluded that Mascio can perform certain functions, he said nothing about Mascio's ability to perform them for a full workday. Id. at 637. Generic findings by an ALJ that a claimant is capable of simple, routine, repetitive tasks is no longer sufficient under SSR 96-8p:

> we agree with other circuits that an ALJ does not account 'for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work.' Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1180 (11th Cir. 2011) (joining the Third, Seventh, and Eighth Circuits).

Id. at 638.

Plaintiff first contends that the ALJ did not adequately consider his difficulties in concentration, persistence, or pace in the RFC and in the hypothetical posed to the Vocational Expert ("VE"). At step three of the sequential evaluation process, the ALJ determined that plaintiff suffered from moderate difficulties in concentration, persistence, or pace. A.R. at 26-27. In constructing the RFC, the ALJ determined that plaintiff had the mental RFC for work that is low stress, defined as a non-production job that is not fast-paced like assembly line work, and with no public contact. A.R. at 28. The ALJ further restricted plaintiff to unskilled work, A.R. at

46, and beyond the RFC, further included a limitation to simple one or two-step tasks when he posed the hypothetical to the VE. A.R. at 89.

In Mascio, the ALJ made a similar determination as to moderate difficulties in maintaining concentration, persistence, or pace, but there, unlike here, the hypothetical to the vocational expert "said nothing about [the claimant's] mental limitations," and the ALJ's RFC finding limited the claimant to merely unskilled work. Mascio, 780 F.3d at 635, 637-638. Unlike the fault in Mascio -- where the ALJ failed to explain how claimant's step three limitations translated into work limitations – here the ALJ specifically explained how those limitations resulted in work limitations and detailed exactly what those limitations were. Rather than being contrary to the decision in Mascio, the court concludes that the ALJ did precisely what the Fourth Circuit instructed be done in Mascio. Indeed, the ALJ here recognized that RFC meant plaintiff's "ability to do physical and mental work activities on a sustained basis despite limitations from his impairments," A.R. at 21, he gave significant weight to medical evidence that informed his decision, A.R. at 44-45, and adopted that medical opinion in formulating RFC. Id. In turn, that medical opinion from a state agency consultant assessed that plaintiff retained the ability to complete a normal workday and workweek without interruptions from

psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length or rest periods was moderately limited, but nonetheless, plaintiff would be generally able to maintain attention for at least two hours at a time as needed to do simple, routine tasks. A.R. at 142. By assessing that plaintiff could maintain attention for at least two hours at a time as needed to do simple, routine tasks, the medical consultant indicated that plaintiff could stay on task for an eight hour workday. Hawley v. Astrue, No. 1:09-CV-246, 2012 WL 1268475, *7 (M.D.N.C. April 16, 2012) ("Defendant correctly points to Social Security Ruling ("SSR") 96–9p, which provides a guideline for customary breaks during a work-day as follows: '... a morning break, a lunch period, and an afternoon break at approximately 2–hour intervals. Thus, customary breaks or 'normal breaks,' would reasonably occur approximately every two hours."). The ALJ's RFC determination further referenced and is supported by the opinion of another consultative psychiatric examiner. Such a method of evaluation clearly satisfies the concerns announced in Mascio.

Second, plaintiff contends that the ALJ erred in not specifically limiting him to simple one or two-step tasks in the RFC. While that argument correctly reflects the RFC, the RFC did include a limitation to unskilled work, A.R. at 46, and the

actual hypothetical posed to the VE included the one to two-step limitation. A.R. at 89. The error assigned is harmless inasmuch as the ALJ limited plaintiff to "unskilled work," the hypothetical included the missing limitation, and the work identified by the VE based on the hypothetical was in fact unskilled work. Camp v. Massanari, 22 Fed. App'x 311, 2001 WL 1658913, at *1 (4th Cir. Dec. 27, 2001); 28 U.S.C. §2111.

Third, plaintiff contends that while relying on the state consultative expert in formulating RFC, the ALJ failed to account for many of the moderate limitations also discussed by such expert. While the expert assessed plaintiff as "moderately limited" when asked to rate certain abilities, the expert explained in the narrative the limitations she assessed. A.R. at 141-143. Comparing the ALJ's RFC determination to that narrative, the court can discover no inconsistencies between the expert's narrative, the ALJ's RFC determination, and ultimately the ALJ's hypothetical to the VE.

Fourth, plaintiff contends that testimony from the VE at the hearing requires remand based on evidence he gave concerning the impact time and attendance would have on plaintiff's ability to perform gainful activity. Such answers were given *not* to the ALJ's first hypothetical, but to his *second* hypothetical which was clearly

posed in the alternative to address plaintiff's subjective complaints and his interpretation of the evidence. A.R. at 91. The VE testified in response to hypothetical two that if an individual had absences from his work station on a daily basis, the duration of which would be up to the individual, i.e., it could vary from hours to an entire day, or if an individual would be absent from work for a week at a time, up to three times in one year, then that individual would be unable to perform gainful employment. A.R. at 91-93. Clearly, the ALJ ultimately rejected this testimony as it was based on an alternative hypothetical. The Fourth Circuit found that an ALJ's hypothetical questions were "entirely proper" when the ALJ asked alternative hypotheticals, with one "incorporat[ing the claimant's] subjective complaints and one that did not." Davis v. Apfel, No. 97–1719, 1998 WL 559728, at *2 (4th Cir. Sept.2, 1998). The Fourth Circuit noted that "[b]y presenting a hypothetical, the ALJ was not making findings of fact." Id. The appellate court found that the ALJ could ask contradictory hypotheticals during examination of the VE and determine later which hypothetical "most closely fit the evidence of record." Id. An ALJ may ask a VE multiple hypotheticals, even if some are contradictory, and is not bound by the answer elicited in the first hypothetical asked. The ALJ's failure to adopt the expert testimony in response to hypothetical two is, therefore, not

erroneous. As discussed herein, the ALJ's first hypothetical is clearly supported by substantial evidence of record and his reliance on the VE's answer to that hypothetical is not error. Plaintiff's argument that the state consultative expert's opinion support's hypothetical two is not supported by a review of that opinion.

### 3. Second Assignment of Error: Global Assessment of Functioning

In his second assignment of error, plaintiff contends that the ALJ improperly considered evidence concerning his Global Assessment of Functioning ("GAF"). The GAF scale judges an individual's level of functioning only at the time of evaluation. *American Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders*, 30 (4th ed. 1994). A GAF score of 51-60 would indicate moderate symptoms or moderate difficulty in social, occupational, or school functioning. However, "[t]he mere diagnosis of [an impairment] . . . says nothing about the severity of the condition." Higgs v. Bowen, 880 F.2d 860, 863 (6th Cir. 1988). Instead, there must be evidence that the impairment also impacted Plaintiff's ability to perform basic work activities. Rogers v. Massanari, 226 F. Supp. 2d 1040, 1045 (E.D.Mo. 2002). It is well-established that GAF scores ranging from even 45 to 50 are not evidence that a claimant's mental impairment is vocationally disabling. Wind v. Barnhart, 2005 WL 1317040, at *6 n.5 (11th Cir. Jun. 2, 2005) (noting that "the

Commissioner has declined to endorse GAF scale for use in the Social Security and SSI disability programs, and has indicated that GAF scores have no direct correlation to severity requirements of mental disorders listings."); Ward v. Astrue, 2008 WL 1994978, at *3 (M.D. Fla. May 8, 2008) ("[A]n opinion concerning GAF, even if required to be accepted as valid, would not translate into a specific finding in regard to functional limitations."); Kornecky v. Commissioner, 2006 WL 305648, at *13 (6th Cir. Feb. 9, 2006) (GAF score "may have little or no bearing" on claimant's occupational functioning); Querido v. Barnhart, 344 F. Supp. 2d 236, 246 (D. Mass. 2004) (GAF score of 50, standing alone, does not provide significant insight into whether claimant can work); Lopez v. Barnhart, 2003 WL 22351956, at *2 (10th Cir. Oct. 16, 2003) (GAF score of 40 may indicate problems unrelated to work ability and, standing alone, "does not evidence an impairment seriously interfering with claimant's ability to work.").

Although the ALJ did not expressly discuss all of plaintiff's GAF scores, failure to reference a GAF score is not, standing alone, a sufficient ground to reverse a disability determination. Mitchell v. Astrue, 2:11-CV-56-MR, 2013 WL 678068, at *8 (W.D.N.C. Feb. 25, 2013) (citing Howard v. Comm'r of Soc. Sec., 276 F.3d 235, 241 (6th Cir. 2002)). A low GAF score is "not an opinion the ALJ had to

address, since it [does] not directly address [a claimant's] ability to perform work-related activities." Leovao v. Astrue, 2:11cv54-MR-DSC, 2012 WL 6189326, at *5 (W.D.N.C. Nov. 14, 2012).  The court finds plaintiff's assignment of error to be without merit.

### 4.    Third Assignment of Error: Substantial Evidence

### a.    Credibility Determinations

Plaintiff contends that the ALJ's denial of claim and determination that he retained the ability to engage in gainful activity is not supported by substantial evidence.  Specifically, plaintiff argues that the ALJ "cherry picked" evidence gleaned from evidence that contained mixed results to support a denial of benefits. Plaintiff takes issue with the ALJ's reliance on social history reports gathered by clinicians to refute plaintiff's contention that he was socially isolated and  the ALJ's reliance on a questionnaire completed by plaintiff's mother (with whom he lived) concerning his activities of daily living, which in part contradicted plaintiff's own version of what he was able to do.

Plaintiff's arguments that the ALJ improperly relied on clinical notes to discredit his allegations of social isolation are without merit.  The activity reported in those notes was consistent with later notes showing plaintiff continued to engage

in an activity which, by its very nature, shows substantial social interaction. Indeed, at one point, plaintiff requested medical attention to address a concern arising from such social interaction.

As to reliance on his mother's 2011 report, plaintiff contends that such reliance was misplaced as it failed to reflect his diminishing activities of daily living as time progressed. Plaintiff's contention is conclusory as it fails to point to evidence of record which supports such a conclusion; indeed, the evidence of record supports an opposite conclusion inasmuch as time passed, the medications plaintiff received were refined and his doctors reported improvement. See A.R. at 508, 519, 520, 521, and 523.

Ultimately, plaintiff is contending that the ALJ improperly discredited his subjective claims. In Hatcher v. Secretary, 898 F.2d 21, 23 (4th Cir. 1989), the Court of Appeals for the Fourth Circuit held that

> it is well settled that: "the ALJ is required to make credibility determinations--and therefore sometimes make negative determinations-- about allegations of pain or other nonexertional disabilities. . . . But such decisions should refer specifically to the evidence informing the ALJ's conclusion. This duty of explanation is always an important aspect of the administrative charge, . . . and it is especially crucial in evaluating pain, in part because the judgment is often a difficult one, and in part because the ALJ is somewhat constricted in choosing a decisional process."

Id., (quoting <u>Hammond v. Heckler</u>, 765 F.2d 424, 426 (4th Cir. 1985) (citations omitted)).  Here, the ALJ adequately explained why he discredited plaintiff's claims and plaintiff's argument that the ALJ improperly considered those sources is without merit.

### b.     Development of the Record

Plaintiff also contends that the ALJ did not adequately develop the record at the hearing concerning his activities of daily living.  He contends that the ALJ should have probed deeper in his questions.  Plaintiff was, however, represented by counsel at the hearing.

> [W]hen the claimant is represented by counsel at the administrative hearing, the ALJ should ordinarily be entitled to rely on the claimant's counsel to structure and present claimant's case in a way that the claimant's claims are adequately explored.

<u>Hawkins v. Chater</u>, 113 F.3d 1162, 1167 (10th Cir. 1997).  The court has closely reviewed the hearing transcript and finds that plaintiff was actively represented by counsel during the hearing.  Indeed, plaintiff's attorney asked questions which elicited testimony concerning social anxiety, daily activities, limitations, and drug use.  A.R. at 63 -81, & 85-86.  The court finds no merit to this assignment of error.

### c.    Bias of the ALJ

Plaintiff also claims – for the first time – that the ALJ was biased.  In support of such allegation, plaintiff cites statistical data showing that this ALJ approved benefits less than the average ALJ.   First, statistical evidence is not sufficient, standing alone, to show bias.  Perkins v. Astrue, 648 F.3d 892, 903 (8th Cir. 2011).  Second, plaintiff failed to raise a claim of bias with the Commissioner even though three avenues are open to claimants to allege bias during the administrative process.  S.S.R. 1-1p.   The problem with statistical evidence is that for there to be an average, there must be those above and below the average.   If the court were to reject decisions from ALJ's below the line simply because they were below the line would skew the statistical model.  Finally, there is nothing in this record to inform this court that this ALJ acted with any bias in reaching his decision.

### d.    Failure to Follow Treatment

Plaintiff next takes issue with the ALJ's consideration of plaintiff's failure to follow treatment as impinging on his credibility.  In Preston v. Heckler, 769 F.2d 988 (4th Cir. 1985), the Court of Appeals for the Fourth Circuit held:

> Because noncompliance with an effective remedial measure provides an alternative basis for denying benefits, the fact finder may draw upon it to negate at any stage of the sequential analysis an otherwise allowable finding of disability.  And because in the general proof

scheme, this basis for denying benefits is analogous to that involving the establishment of residual functional capacity to engage in other gainful employment, the burden to establish it by substantial evidence should also be on the Secretary.

Id., at 990. Here, the ALJ explained that he was not finding that plaintiff's failure to comply with treatment alone was sufficient grounds to deny benefits, but the fact did weigh against his credibility. A.R. at 41.

The law and regulations governing the issue of failure to follow prescribed treatment or medication, as well as substantial evidence of record, support the ALJ's finding that some of the plaintiff's symptoms could not be considered because plaintiff failed to follow prescribed treatment which could have alleviated them. The Social Security Regulations provide

In order to get benefits, you must follow treatment prescribed by your physician if this treatment can restore your ability to work. . . . If you do not follow the prescribed treatment without a good reason, we will not find you disabled, or if you are already receiving benefits, we will stop paying you benefits.

20 C.F.R. 404.1530(a)-(b). The regulations list the following "good reason[s] for not following treatment:

(1)    The specific medical treatment is contrary to the established teaching and tenets of your religion.

(2)     The prescribed treatment would be cataract surgery for one eye, when there is an impairment of the other eye resulting in a severe loss of vision and is not subject to improvement through treatment.

(3)     Surgery was previously performed with unsuccessful results and the same surgery is again being recommended for the same impairment.

(4)     The treatment because of its magnitude (e.g. open heart surgery), unusual nature (e.g., organ transplant), or other reason is very risky for you; or

(5)     The treatment involves amputation of an extremity, or a major part of an extremity.

20 C.F.R. 404.1530(c).  Social Security Ruling 82-59 discusses "justifiable cause for failure to follow prescribed treatment" in more detail.  It adds more reasons to the list set out in the above regulation, including the inability to afford treatment, which is what plaintiff is alleging in this appeal.  The ruling explains:

> The individual is unable to afford prescribed treatment which he or she is willing to accept, but for which free community resources are unavailable. Although a free or subsidized source of treatment is often available, the claim may be allowed when such treatment is not reasonably available in the local community. All possible resources (e.g., clinics, charitable and public assistance agencies, etc.) must be explored. Contacts with such resources and the plaintiff's financial circumstances must be documented.

S.S.R. 82-59, at 5.  In Gordon v. Schweiker, 725 F.2d 231, 237, (4th Cir. 1984), the appellate court upheld the ruling's requirement that a plaintiff show he or she has exhausted all sources of free or subsidized treatment and document his or her

financial circumstances before a plaintiff can show good cause for failing to comply with prescribed treatment. Id. Clearly, the burden of production is the Commissioner's with respect to the issue of failing to follow prescribed treatment. See Preston v. Heckler, supra, at 990. This burden has been met with the extensive evidence that the plaintiff had Medicaid; even if he did not have Medicaid, there was no evidence of record that plaintiff availed himself of other free resources for receiving an eye exam. Indeed, the testimony at the hearing indicated that his parents provided for his medical care. The ALJ properly discounted the plaintiff's allegations of disability due to symptoms which could easily have been controlled or corrected by simply getting an eye exam. Similarly, plaintiff's statement that he was not told by his doctors to stop smoking was refuted by the medical evidence, wherein plaintiff was consistently told to stop smoking.

Plaintiff complains on appeal that the ALJ should not have diminished his credibility because no doctor ever said that smoking cessation would help with his impairments. Plaintiff is mixing apples and oranges as the ALJ used such inconsistency not to deny benefits, but to make a determination as to credibility.

Further, plaintiff complains that the ALJ rejected his diagnosis of peripheral neuropathy because plaintiff failed to follow the doctor's recommendation that he

have his peripheral nerve tested. Such contention is without merit as the ALJ did not reject such diagnosis for failure to participate in a test, but rejected the diagnosis because it was not supported by medical evidence confirming the diagnosis. An impairment must be "medically determinable" meaning it must be shown by "medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d). The fact that plaintiff refused to engage in testing which may have helped confirm such a diagnosis is without consequence.

### e.     Consideration of Additional Ailments

Finally, plaintiff contends that the ALJ improperly considered his back impairment because plaintiff did not cite his back impairment as a reason for not being able to work. The medical evidence showed that plaintiff periodically complained of back pain. A.R. at 22-23, and 370, 1103, 1124, 1151, & 1218. Because the medical record included evidence of back pain, it was entirely proper for the ALJ to consider whether plaintiff had a medically determinable back impairment and whether it caused any limitations that could impact his claim.

**E.     Conclusion**

The undersigned has carefully reviewed the decision of the ALJ, the transcript of proceedings, plaintiff's motion and brief, the Commissioner's responsive pleading, and plaintiff's assignments of error.  Review of the entire record reveals that the decision of the ALJ is supported by substantial evidence.  <u>See</u> <u>Richardson v. Perales</u>, <u>supra</u>; <u>Hays v. Sullivan</u>, <u>supra</u>.  Finding that there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," <u>Richardson v. Perales</u>, <u>supra</u>, plaintiff's Motion for Summary Judgment will be denied, the Commissioner's Motion for Summary Judgment will be granted, and the decision of the Commissioner will be affirmed.

**ORDER**

**IT IS, THEREFORE, ORDERED** that

(1)     the decision of the Commissioner, denying the relief sought by plaintiff, is **AFFIRMED**;

(2)     the plaintiff's Motion for Summary Judgment (#14) is **DENIED**;

(3)     the Commissioner's Motion for Summary Judgment (#20) is **GRANTED**; and

(4)    this action is **DISMISSED**.

Signed: February 5, 2016

Max O. Cogburn Jr.
United States District Judge